**ALLIED CONTRACTORS, INC.**
v.
**The UNITED STATES.**
No. 93–60.

United States Court of Claims.
Dec. 5, 1962.

Horace S. Whitman, Washington, D. C., for plaintiff.

Alfred H. O. Boudreau, Jr., Washington, D. C., with whom was Acting Asst. Atty. Gen. Joseph D. Guilfoyle, for defendant.

WHITAKER, Judge.

Plaintiff's petition alleges that it made a mistake in its bid for the construction of the Protective Equipment Laboratory at the Army Chemical Center at Edgewood, Maryland, and that this mistake was known to the contracting officer. Accordingly, it asks us to reform the contract so as to increase its bid of $20,000 on item 2 of the contract to $55,042.00, which it says is the amount it should have bid and would have bid except for the mistake.

■■ Plaintiff is represented by one of the most-respected members of the bar of this court. For many years he has served his clients honorably and well. He has made an able presentation of this case, but we regret to say that we are of

opinion plaintiff is not entitled to recover. It is not entitled to recover unless the mistake was mutual. There is no doubt that plaintiff made a mistake, but there can be no recovery unless defendant was aware of the fact that it had done so. A contract, of course, will not be reformed for a unilateral mistake.

To show that defendant was aware that plaintiff had made a mistake in its bid, plaintiff relies primarily on the fact that the next lowest bid on item 2 of the contract was almost two and one-half times its bid. There was a great discrepancy between plaintiff's bid on item 2 and the others. Plaintiff's was $20,000; the others were $49,918, $60,531, $70,000, $95,000 and $122,000. However, plaintiff's bid was only $1,140 under what defendant had estimated the work would cost.

So, the discrepancy between plaintiff's bid and the others did not put defendant on notice that plaintiff had made a mistake, since its bid was so close to the defendant's estimate of the cost.

The Invitation for Bids provided that the work would "be awarded as a whole to one bidder." Plaintiff's total bid was only $38,002 lower than the next lowest bid, and only $49,334 lower than the next lowest. This is not a great variance on a one-half million-dollar job. The contracting officer's attention was directed primarily to the overall bid; since on this basis plaintiff's bid was in line with others, there was nothing here to make the contracting officer suspect that plaintiff had made a mistake.

As we have said, there is no doubt that plaintiff did make a mistake. It was a little careless in getting a bid on some work which plaintiff desired to do by subcontract. Before putting in its bid, plaintiff's president, John J. Pecora, phoned the George H. Schuman Company, Inc., asking it to bid on a certain portion of the work, but the record is not clear as to just what part of the work was specified. At any rate, plaintiff thought the bid it received from Schuman over the phone covered the following items:

Section 25 (Plumbing and Piping);

Section 26 (Air Conditioning, Heating, Ventilating and Exhaust Systems);

Section 27 (Scrubber Tower and Tank); and

Section 34 (Steam Distribution System), except for steel supports and concrete required for the overhead steam lines.

Schuman did not think so. Plaintiff required of Schuman no written confirmation of its oral bid, as prudence would have required it to do. Schuman refused to do this work, and plaintiff had to get another subcontractor to do it, at a cost of $31,686.

After the bid opening, Pecora returned to his office and rechecked his bid calculations because he was concerned about the difference between his bid on item 2 and those of the other bidders. He found he had placed some items of construction under bid item 1 that normally he would have placed under item 2, but he felt satisfied that there was no error in his overall bid. Since plaintiff was satisfied with its bid, after checking it, it can hardly be said that it was apparent to the defendant's representatives that plaintiff had made an error.

Bids were opened on July 21, 1951; the award of the contract to plaintiff was made 27 days later, and 18 days later plaintiff was given notice to proceed with the work in ten days. Plaintiff acknowledged receipt of the notice to proceed on August 27, and the next day sent to Schuman for execution a subcontract which embodied the disputed items set out above. Schuman finally refused to execute the subcontract some time in September. Not until then did plaintiff suspect, so its president says, that there had been an error in its bid. Even so, plaintiff did not then mention the matter

to defendant's representatives because, it says, it did not know, even then, that it could not profitably do the work for the amount of its bid.

In January 1952 plaintiff got a bid on doing the work Schuman refused to do. Even then plaintiff did not mention the matter to defendant's representatives, and did not do so until defendant issued a stop order on January 18, 1952 stopping the work on these particular items.

After the stop order, plaintiff's president, on January 24, 1952, had a conference with a representative of the District Engineer's office relative to an adjustment on account of the stop order. At this time, plaintiff's president sought to discuss the error in its bid, but defendant refused to consider this at the same time adjustments on account of the stop order were being considered. At this time plaintiff apparently did not inform defendant of the amount nor of the nature of the mistake it claimed to have made.

This was the first time plaintiff had mentioned the matter to defendant, and this was more than six months after the bids had been opened.

The work was completed on July 15, 1953. Not until November 13, 1953 did plaintiff notify defendant of the cost it had incurred of rectifying the mistake it claimed to have made. This was more than a year after the contract had been let.

It seems to us apparent from the above recital that there was nothing to put defendant on notice, when it entered into the contract with plaintiff, that plaintiff had made a mistake. It is not contended that defendant had actual knowledge. This being true, there was no mutual mistake, and plaintiff is not entitled to reformation of the contract. Defendant's liability is measured by the contract as drawn, subject to subsequent modifications.

Defendant also pleads the statute of limitations, but we do not discuss this defense because it seems so clear to us that plaintiff is not entitled to recover on the merits.

Plaintiff's petition will be dismissed.

JONES, Chief Judge, and DAVIS, DURFEE, and LARAMORE, Judges, concur.